UNITED STATES of America, Plaintiff

v.

**Luis Santiago CRUZ, Defendant.**

**Criminal No. 06–409 (FAB).**

United States District Court,
D. Puerto Rico.

April 20, 2007.

Antonio R. Bazan–Gonzalez, United States Attorney's Office, San Juan, PR, for Plaintiff.

## OPINION AND ORDER

BESOSA, District Judge.

On December 28, 2006, a grand jury sitting in this district issued a two-count

indictment, charging Luis Santiago Cruz ("Santiago") with possession with intent to distribute approximately three-hundred ninety-seven grams (397g) of cocaine and approximately two-hundred and twenty grams (220g) of cocaine base (crack cocaine), in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Docket No. 10). On March 12, 2007, Santiago moved to suppress the evidence seized pursuant to a search warrant, arguing that the affidavit submitted in support of the application for a search warrant did not on its face contain sufficient valid information to establish probable cause (Docket No. 19). On March 15, 2007, the United States opposed the motion (Docket No. 21). For the reasons discussed below, the Court **DENIES** Santiago's motion to suppress.

## FACTUAL BACKGROUND [1]

In May 2005, a confidential source ("CS1") stated that Santiago stores money and drugs for the gang from the Juana Matos Housing Project ("JMPHP"), in Cataño Puerto Rico. CS1 also stated that Santiago gets drugs for the sellers when they run out of a particular drug. CS1 stated that he has personally seen Santiago taking approximately 200 blue-capped capsules of crack cocaine to the drug point.

In November 2006, another confidential source ("CS2") conducted a controlled narcotics purchase at the JMPHP. CS2 went to building 44, where the drug point is located, and was asked by an unidentified subject ("Unsub1"), if he wanted to purchase drugs, specifically marijuana, heroin, crack, or cocaine. CS2 stated that he wanted to purchase crack cocaine. Unsub1 then directed a second unknown person ("Unsub2") to get the vials from build-ing 38. Unsub2 went to building 38, but returned empty-handed. Unsub1 then directed Unsub2 to building 34. Unsub2 approached the first-floor apartment in the northern side of building 34, the apartment subject of the search warrant, and was seen receiving a package from a back window. Unsub2 then returned to the drug point with the package. The package, which was given to CS2, contained thirty-six crack cocaine vials.

Also in November 2006, surveillance observed defendant Santiago inside the subject apartment in building 34. He is the registered occupant of the apartment and his arrest records list it as his home address.

On December 15, 2006, a Magistrate Judge issued a search warrant for the subject apartment in building 34 (Docket No. 1, Exh. 1). On December 20, 2006, FBI agents executed the search warrant. Santiago was inside the apartment (*Id.*). During the search, the agents found approximately 161 vials containing two-hundred twenty grams (220g) of a white crystal-like substance that field-tested positive for the presence of cocaine and approximately 941 one inch by one inch bags which contained approximately three-hundred ninety-seven grams (397g) of a white powder substance which field-tested positive for the presence of cocaine (*Id.*). The agents also found one-thousand eight-hundred eighty-four dollars ($1,884.00) in currency (*Id.*).

## DISCUSSION

A. *Standard for Reviewing a Magistrate Judge's Determination of Probable Cause to Issue a Search Warrant*

 "It is clearly established that an affidavit serving as the basis for issuance

---

**1.** The relevant facts are taken from the affidavit supporting the application for a search warrant. (Docket No. 21, Exh. A).

of a search warrant 'is sufficient when it 'demonstrates in some trustworthy fashion the likelihood that an offense has been committed and that there is sound reason to believe that a particular search will turn up evidence of it.' " *United States v. Spinosa,* 982 F.2d 620, 625–26 (1st Cir. 1992) (*quoting U.S. v. Aguirre,* 839 F.2d 854, 857–58 (1988)). "[P]robable cause to issue a search warrant exists when given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Procopio,* 88 F.3d 21, 25 (1st Cir.1996) (*citing Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

> [P]robable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.

*Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

■ "The task of the reviewing court is to determine whether a 'substantial basis' existed for the Magistrate Judge's determination that probable cause existed. Factors to be considered in determining whether a search warrant should issue include 'the value of corroboration of details of an informant's tips by independent police work.' " *United States v. Keene,* 341 F.3d 78, 81 (1st Cir.2003) (*quoting Gates,* 462 U.S. at 238, 241, 103 S.Ct. 2317). To determine the sufficiency of an affidavit, the court considers "whether the 'totality of circumstances' stated in the affidavit

demonstrates probable cause to search the premises." *U.S. v. Martin,* 286 F.Supp.2d 43, 45 (D.Mass.2003) (*quoting United States v. Barnard,* 299 F.3d 90, 93 (1st Cir.2002)). "The court approaches this task in a 'practical, 'common sense' fashion' according deference to any reasonable inferences or findings of probable cause made by a magistrate." *Id.* (*quoting United States v. Zayas–Diaz,* 95 F.3d 105, 111 (1st Cir.1996)). Courts generally presume that an affidavit submitted in support of a search warrant application is valid, "but that presumption may be surmounted by a showing that it contains either (1) a 'false statement [made] knowingly and intentionally, or with reckless disregard for the truth' or (2) 'technically accurate statements' that 'have been rendered misleading by material omissions....' " *U.S. v. Grant,* 218 F.3d 72, 77 (1st Cir.2000) (citations omitted).

### B. *Santiago's Motion to Suppress*

■ Santiago raises three issues in his request for suppression, all three addressed at the sufficiency of the affidavit submitted in support of the search warrant application and upon which the Magistrate Judge based her finding of probable cause. First, Santiago argues that the surveillance teams could not see the acts alleged to have taken place in November 2006. Santiago alleges that because of the terrain, the agents' location is suspect. He does not, however, give any description of the area that would put the Court in a position to determine if his arguments have any merit. In any case, it is unlikely that Santiago knows the agents' location or locations during the surveillance and he has no way of knowing what they could or could not see. Second, Santiago argues that CS1 is not a reliable source. But he does not further develop any arguments to support his contention. Santiago admittedly does not know the identity of either

CS1 or CS2 and his argument seems like a thinly-veiled attempt to ascertain their identities prior to trial. In any event, the finding of probable cause was not premised exclusively on the information from CS1. And third, Santiago argues that the affidavit does not state with specificity the information upon which the agent relied. Santiago states that the fact that the affidavit does not include the exact dates and times of the surveillance or the names of the agents who participated should have put the Magistrate Judge on notice that the affidavit contained insufficient information.

These issues raised by the defendant, however, are insufficient to rebut the general presumption that the affidavit is valid. To prevail in his challenge of the warrant application, Santiago must show that the affidavit contains either "a 'false statement [made] knowingly and intentionally, or with reckless disregard for the truth' or (2) 'technically accurate statements' that 'have been rendered misleading by material omissions....'" *Grant,* 218 F.3d at 77 (citations omitted). He has failed to make the required showing. His challenge is aimed mainly at the agents' perception of the events or the reliability of a confidential source, but at no time does he challenge the veracity of the affidavit's statements.

Moreover, Santiago is not entitled to a hearing on his request for suppression. Under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), a hearing is required at the defendant's request only after he makes a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause...." *Id.* at 155–6, 98 S.Ct. 2674. Because San-

tiago did not make the necessary preliminary showing, he does not have the right to a hearing.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Santiago's motion to suppress. The Jury Trial is scheduled to begin on June 18, 2007 at 9:00 a.m.

**IT IS SO ORDERED.**